## CELESTIA L. BURCHARD

### *v.*

### AARON DUNBAR.

1. CONFLICT OF LAWS—*of the right and the remedy—by what law governed.* The law of the place where a contract is made will control in ascertaining the rights and liabilities of the parties, but no further. When these are ascertained, the law of the place where its enforcement is sought will govern as to the remedy.

2. Where, by the law of another State, the liability of a party to a contract, executed in that State, is of an equitable character, it can be enforced in this State only in a court of equity, although, by the laws of the State where it was executed, it could be enforced in a court of law.

APPEAL from the Circuit Court of Kankakee county; the Hon. NATHANIEL J. PILLSBURY, Judge, presiding.

This was assumpsit, by appellee, against appellant and her husband, Patrick H. Burchard, on an instrument in writing, of which the following is a copy:

"$403.44                      HAMILTON, *January* 1, 1866.

"For value received, we, jointly and severally, promise to pay A. D. Dunbar, or bearer, $403.44, in three equal annual payments, the first payment to become due January 1, 1867, with annual interest on all sums remaining unpaid, and the whole to become due January 1, 1869.

"The undersigned, Celestia L. Burchard, wife of the undersigned P. H. Burchard, for value received, further promises and agrees that her separate estate, both real and personal, shall be charged with the payment of the said sum of $403.44 and interest; and that the said moneys hereby agreed to be paid shall be a lien and charge upon her separate estate, and she hereby declares it to be her intention to charge, and hereby does charge, her separate estate with the payment of said sum of $403.44 and interest.

CELESTIA L. BURCHARD.
P. H. BURCHARD."

Appellant filed a separate plea, in which she avers that "the said plaintiff ought not to have or maintain his action, etc., because the several causes of action in the declaration are one and the same, viz: the note set out in first count, and not other or different; that she, before and at the time of making said supposed promises, was the wife of her co-defendant, Patrick H. Burchard, and hath so ever since been, and still is; that the sole consideration for said note was the sole and individual indebtedness of the said Patrick H. Burchard to the said plaintiff, for money due upon an account stated between them, and that

she signed the said note only, in fact, as security for the said Patrick H. Burchard, her husband, and for no other cause or consideration whatever, and denies that, by the laws of the State of New York, she thereby charged her separate estate, and wherefore she prays judgment, etc."

The following stipulation between the parties was read in evidence, on the trial, without objection:

" It is hereby stipulated between the parties that, upon the trial of said cause, the parties may offer in evidence, under the pleadings upon file, any matter, or thing, or defense, or reply any matter or thing, as if any other pleas, pleadings, defenses or replications were filed therein; and it is further stipulated that the said Celestia L. Burchard was the wife of P. H. Burchard at the time said instrument in first count of plaintiff's declaration was made, and that the same was made in the State of New York; and that the printed Statutes of New York and decisions of the Court of Appeals, or Commission of Appeals, may be introduced upon argument, by either party, to show what the law of New York was and is on said note and matters in dispute in said cause; and that the allegations in the plea filed herein as to said note in suit being given solely for the individual indebtedness of the said defendant Patrick H. Burchard, and signed by said Celestia L. Burchard as security for him, and for no other consideration, as in said plea alleged, is true, and if it shall become material to them that Celestia L. Burchard, at the time of the execution of said note, or at any time since then, had property, at any time before final judgment, proof thereof may be introduced as controverting the same, and either party may introduce such proof before the final determination of said cause, or next term of this court; that nothing in this stipulation shall bind either party in any other suit, trial or litigation between said parties, or either of them.

" Dated September 27, 1875.

BONFIELD & PADDOCK,
Attorneys for plaintiff.
G. S. ELDRIDGE,
Attorney for defendants."

Certain statutes and decisions of courts of New York were read on the argument, but such of them as are deemed material to the questions arising in the case are referred to in the opinion, and therefore need no mention here.

Judgment was given for the plaintiff, against both defendants, for $465.20 and costs, and Celestia L. Burchard, after moving for a new trial, which was refused, appeals to this court.

Mr. G. S. ELDRIDGE, for the appellant.

Messrs. BONFIELD & PADDOCK, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The instrument on which suit is brought having been executed in the State of New York, we must resort to the law of that State to determine the nature of the obligation it imposes on the appellant. Prior to the enactment of recent statutes, and decisions thereunder, it is quite clear there was no substantial difference in the law, in this respect, in the State of New York and this State. Thus, it was held in *Yale* v. *Dederer*, 18 N. Y. 265, and 22 id. 454, that the signing of a promissory note by a married woman, as surety for her husband, merely, did not, even in equity, bind her separate estate, notwithstanding she, in fact, intended it to have that effect; and this ruling is referred to with approval and followed in *Carpenter* v. *Mitchell*, 50 Ill. 470; *Williams* v. *Hugunin*, 69 id. 214; *Bressler et al.* v. *Kent*, 61 id. 426. But in *Yale* v. *Dederer, supra*, the court went further, and held that, in order to create a charge upon the separate estate of a married woman, the intention to do so must be declared in the very contract which is the foundation of the charge, or the consideration must be obtained for the direct benefit of the estate itself; thus, by implication, holding that a charge upon the separate estate of a married woman might be created where the intention to do so is declared in the contract which is the foundation of the charge, or the consideration is for the direct benefit

of the estate itself. And in *The Corn Exchange Insurance Co.* v. *Babcock*, 42 N. Y. (Appx.) 613, the Commission of Appeals so expressly ruled, and, also, that it was unnecessary that the contract should contain a description of the property to be charged. This point has never arisen for adjudication in this court, nor is it now necessary to indicate what our conclusion would be were the question one for our determination. It is sufficient, for the present, that such is the law of the place where the contract was made. In the case last referred to, a judgment was sustained, under the New York code of procedure—in form, a judgment at law—without indicating any property out of which it was to be satisfied; and Commissioner Hunt, in the majority opinion, says, alluding to objections to the form of the proceedings: "I have considered these points with reference to our statutes. As, in my judgment, this case comes within those statutes and the form of the action, the form of the judgment and the execution upon it are to be regulated by them. They are right, in form, under the provisions of our statutes."

The court below held, on the authority of this case, we infer, that the obligation of appellant was valid and binding at law in the State of New York, and, consequently, that it can be enforced here as a legal undertaking.

It would seem that the quotation we have made from the opinion of Commissioner Hunt, itself, shows that the form of the remedy in that case was approved solely because it was authorized by the New York Statutes; but he again says, at page 638: "Where the proceeding was strictly one in equity, it may have been necessary that the judgment should specify the property against which the process should issue. Under our statutes, the suit, the judgment and the execution are in the ordinary manner of suits at law."

Earl, Com'r, in his separate opinion in the same case, at page 642, says: "The position of a *feme covert*, then, in this State, in reference to her contracts, is as follows: She is bound, like a *feme sole*, by all her contracts made in her separate business, or relating to her separate estate, within the

meaning of the acts of 1848, 1849, 1860 and 1862; and such contracts can be enforced in law or equity, as the case may be, just as if she were a *feme sole.* All her other contracts are void at law, and do not bind her personally, but may be enforced in equity against her separate estate, provided the intention to charge the estate be stated in the contract." He comes to the conclusion that the defendant, by her contract of indorsement, charged her separate estate, in equity, and that it might, under their statutes, be reached through the form of proceeding then before the court, first, however, amending the judgment so as to require a satisfaction out of the defendant's separate estate.

As we understand the opinion of Commissioner HUNT, he does not claim that, under the laws of that State, a married woman incurs a general indebtedness by such an instrument, but simply that she creates a charge upon her separate estate, which may be enforced by a form of proceeding like that then under consideration. The basis of the liability is, therefore, still of an equitable nature, though materially modified by statute.

In *Loomis* v. *Ruck et al.* 56 N. Y. 462, suit was brought on an instrument having the form of an ordinary promissory note, except that it concluded by charging the amount upon the separate estate of the maker, and stating that the consideration had been incurred for the benefit thereof. The defense was interposed that the signature was obtained by duress; and, in determining whether this defense could be set up against the plaintiff, who was an assignee, the court said: "The note, so far as Mrs. Ruck was concerned, was void at common law, by reason of her coverture, and it is not helped by any of the statutes of this State in respect to married women. These statutes render valid, at law, such contracts, only, of *femes covert* as relate to their separate estates, or are made in the course of their separate business. As to the last mentioned contracts, married women, under our statutes, stand, at law, on the same footing as if unmarried, and can, therefore, make negotiable paper, which will be governed by the law mer-

chant; but as to other obligations; they still stand on the same footing as before the enactment of these statutes. Their contracts are void at law, but if they have separate estates, courts of equity will enforce them as against such estates. According to the late decisions in this State, an express charge upon the separate estate is required to be contained in the contract. The law merchant, which gives to the *bona fide* transferee of negotiable paper greater rights than those of the transferrer, has no application to this class of obligations. They are not recognized at law, and we have been referred to no authority tending to sustain the position that the transferree of an obligation of a married woman, obtained from her by fraud or duress, and against which she had a good defense, when in the hands of the original holder, can be enforced, in equity, out of her separate estate, simply because it has passed into the hands of a *bona fide* transferree. The rules applicable to commercial paper can not govern this case. It must be governed by the rules of equity, which, in case of equal equities, and in the absence of sufficient grounds of estoppel, give preference to the equity which is prior in point of time."

This decision was rendered nearly four years after the announcement of the decision in *The Corn Exchange Ins. Co.* v. *Babcock, supra,* and was concurred in by all the members of the Court of Appeals, and must be regarded as conclusive that the liability of a married woman, in such cases, is purely equitable, and that what was said in *The Corn Exchange Ins. Co.* v. *Babcock,* in regard to enforcing it as a judgment at law, had relation to the form of the remedy as provided by statute in that State, only.

But the law of the remedy is no part of the contract. *Wood et al.* v. *Child et al.* 20 Ill. 209. "When the question is settled that the contract of the parties is legal, and what is the true interpretation of the language employed by the parties in framing it, the *lex loci* ceases its functions, and the *lex fori* steps in and determines the time, the mode and the extent of the remedy." *Sherman et al.* v. *Gassett et al.* 4 Gilm. 531; *Chenot* v. *Lefevre,* 3 id. 643.

That appellant charged her separate estate with the payment of the amount of the note, by the law of New-York, is beyond question, under the authority of *The Corn Exchange Ins. Co.* v. *Babcock, supra,* which the Court of Appeals, in *Maxon* v. *Scott,* 55 N. Y. 251, says must now be regarded as the established law of that State. But this is in equity only; and, although by our present statutes (R. L. of 1874, p. 576,) married women may sue and be sued, either with or without joining their husbands, and defend without regard to whether the husband shall defend or not, and judgments may be recovered against them and satisfied out of their separate estates, we still preserve the distinctions between actions at law and suits in equity; and there is no authority for suing and obtaining judgments against them in actions at law on purely equitable liabilities.

The liability of the husband, here, is at law, on the promissory note. The promissory note, as to appellant, is void at law, and the only ground of proceeding against her is in equity. She has charged her estate with its payment. It is absurd, therefore, that, still observing the distinctions between courts of law and courts of equity in administering remedies, there should be a joint judgment against them at law.

The judgment is reversed.

*Judgment reversed.*